**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA**,

Plaintiff,

vs. 15-CR-2732 JAP

**SHANE ROACH**,

Defendant.

**MEMORANDUM OPINION AND ORDER**

On April 13, 2016, Defendant Shane Roach filed a motion to suppress the physical and electronic evidence obtained during the search of his residence and the electronic evidence obtained during the search of his vehicle.[1] *See* MOTION TO SUPPRESS EVIDENCE (Doc. No. 84) ("Motion"). The United States opposes the motion on the basis that officers possessed three valid warrants authorizing the search of Defendant's home, vehicle, phones, and electronics and reasonably relied on these warrants in executing the challenged searches. *See* GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (Doc. No. 99) ("Response"). In his reply, Defendant insists that the United States has not carried its burden of establishing good faith reliance on the warrants. *See* REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (Doc. NO. 106) ("Reply"). For the reasons discussed below, the Court will grant Defendant's Motion only as to evidence obtained from the search of Defendant's cellphones, and will otherwise deny the Motion.

[1] Defendant does not challenge the constitutionality of the police seizure of the physical evidence (e.g., a firearm) from his vehicle.

**Background**

On June 29, 2015, Albuquerque Police Department Detective Matthew Vollmer acquired a warrant to search Defendant's residence for (1) firearms, ammunition, and documents related to their possession, (2) electronic and magnetic devices, (3) cellphones and other phone-like devices, and (4) illegal narcotics.[2] The warrant authorized the "complete search" of all phones recovered from the home. (Doc. No. 84-1 at 4). The following day, after searching Defendant's apartment, Detective Vollmer obtained a nearly identical warrant to search Defendant's car for the items enumerated above. (Doc. No. 84-3). Like the warrant to search Defendant's home, the second warrant also authorized police to conduct a "complete search" of any cellphones that they seized. *Id.* at 4. The only difference between the two warrants was the inclusion of additional factual allegations in the June 30, 2015 warrant to search Defendant's vehicle. Detective Vollmer testified that he accidentally omitted these allegations from the filed copy of the June 29, 2015 warrant to search Defendant's residence. To correct this mistake, on June 30, 2016, Detective Vollmer obtained a third warrant to search Defendant's home that included the missing pages. (Doc. No. 84-2).

In the briefing, neither party relies on the third warrant, which was issued after the search of the home was completed, to justify this search. The Court, likewise, will evaluate the constitutionality of the search of Defendant's home based on the terms of the June 29, 2015 warrant under which the search was executed. The Court notes, however, that the minor

[2] The search warrant is a one-page document accompanied by an attached affidavit. (Doc. No. 84-1). The search warrant itself does not list the items to be seized, but instead incorporates the affidavit and directs officers to search the "place described in the Affidavit . . . for the . . . property described in the Affidavit." *See* (Doc. No. 84-1 at 1) (declaring that the affidavit is "made part of [the] Search Warrant]"). For ease of reference, the Court will refer to the search warrant and the affidavit collectively as the June 29, 2015 "warrant" to search Defendant's home. The Court will use a similar shorthand when discussing the June 30, 2015 "warrant" to search Defendant's vehicle (Doc. No. 84-3) and the June 30, 2015 "warrant" to search Defendant's home (Doc. No. 84-2).

differences between the June 29, 2015 warrant and June 30, 2015 warrants would not change the outcome of this case.

The following is a synopsis of the factual allegations that supported both the issuance of the June 29, 2015 warrant and the June 30, 2015 warrants. On May 27, 2015, as part of a vice investigation, Detective Vollmer contacted D.G. through a backpage.com advertisement for prostituion and met with D.G. in her hotel room while acting in the role of an undercover "john." (Doc. No. 84-1 at 4). A few weeks later, on June 10, 2015, D.G. called unnamed detectives and reported that "she was being trafficked for sex." *Id.* Detective Vollmer responded to the call and D.G. agreed to voluntarily leave with the police. *Id.* The following day she gave an interview to Detective Vollmer regarding her work as a prostitute. *Id.* at 5. In relevant part, she told Detective Vollmer that:

(1) She was a heroin addict and had been working as a prostitute for approximately two years. *Id.*

(2) She had been working as a prostitute for a man named "Shane" for about a month and a half. D.G. first met Shane in mid-April 2015 when Shane contacted her in reference to her backpage.com advertisement and took her out to eat. During this meal, Shane told her "he wanted to help her reach her full potential, and he would post the ad's [sic] and protect her." She said she needed time to think about it so Shane arranged to pick her up the next morning. *Id.*

(3) Per this discussion, the following morning, Shane arrived at the Motel 6 where D.G. was staying and picked her up. He then took her to a Dollar Store and bought her food. He also confiscated her money ($32), identification, and old cell-phone. Finally, he provided her with a new phone and took her to the Roadway Motel located on

Menual and told her not to leave her room. He explained how he would arrange for customers to come to her to engage in sexual activity. During this conversation, Shane had a handgun on his lap. *Id.*

(4) D.G. worked for Shane for the following month and a half. During this time, Shane beat her six or seven times, including one time after he found messages about D.G. leaving him. *Id.*

Detective Vollmer conducted an investigation into these allegations. Through surveillance and phone searches, Detective Vollmer identified Defendant Roach as "Shane," the man prostituting D.G. *Id.* at 6.

During the execution of the warrants, police seized firearms, drugs, drug paraphernalia, cellphones, computers, credit cards, and ledgers from Defendant's home. *Id.* at 2. Additionally, police seized two phones and one firearm from Defendant's vehicle. (Doc. No. 84-3 at 2).

**Findings of Fact**

On June 20, 2016, the Court held a hearing on Defendant's motion to suppress. At this hearing, Detective Matthew Vollmer testified about the execution of the search warrants. Based on this testimony, the Court makes the following findings of fact under Federal Rule of Criminal Procedure 12(d).

1. Albuquerque Police Department officers seized numerous phones during the June 29, 2015 search of Defendant's home and the June 30, 2015 search of Defendant's vehicle.
2. Detective Matthew Vollmer is not a forensic expert and is not trained to conduct forensic processing of cellphones and computers.

3. Detective Vollmer relied on forensic specialists at Homeland Security Investigations ("HSI") and the Regional Computer Forensic Laboratory ("RCFL") to process Defendant's phones and assist him in searching the data on these phones.
4. Detective Vollmer split Defendant's phones into two batches and provided some of the phones to HSI and the others to RCFL.
5. Detective Vollmer provided the forensic specialists at HSI and RCFL with a copy of the warrants. He did not otherwise provide clear directions to these specialists on what to search for on the phones. In fact, Detective Vollmer told an RCFL specialist that he would like Defendant's devices to be "dumped."
6. Detective Vollmer was not present when HSI agents searched and/or processed Defendant's phones.
7. Detective Vollmer believed HSI and RCFL agents were authorized to search Defendant's phones to the extent allowed by the warrants.
8. During his testimony, Detective Vollmer indicated that he did not understand the search of Defendant's phones to be limited and he did not volunteer any comprehensive boundaries on his ability to search Defendant's phones.
9. Detective Vollmer read Defendant's text messages.

## Discussion

Defendant Roach makes three arguments in his motion to suppress: (1) Defendant contends that all evidence seized under the June 29, 2015 warrant to search his home should be suppressed because this warrant does not satisfy the Fourth Amendment particularity requirement, (2) Defendant maintains that the warrants did not authorize police to search the contents of the cellphones, (3) in the alternative, Defendant argues that the search of the

cellphones should be suppressed because the warrants authorized a general and impermissible search of the complete contents of each phone. Although the first two arguments lack merit, the Court determines that the warrants did not adequately proscribe the search of Defendant's cellphones.

## I. Particularity of the June 29, 2015 Warrant to Search Defendant's Home

The Fourth Amendment requires that a warrant particularly describe the place to be searched and the things to be seized. *United States v. Brown*, 984 F.2d 1074, 1077 (10th Cir. 1993). Stated differently, a "search should be confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Id.* Whether a warrant is sufficiently "particular" is a practical determination. The test is one of reasonableness: is "the description . . . as specific as the circumstances and the nature of the activity under investigation permit"? *United States v. Leary*, 846 F.2d 592, 601 (10th Cir. 1988). The goal is to preclude "general, exploratory rummaging in a person's belongings." *Id.* at 600.

Here, Defendant complains that the June 29, 2015 warrant "failed to identify a particular crime that was being investigated . . . and therefore failed to tailor the search to particular evidence relating to that particular crime." Motion at 5. As a general matter, the Court disagrees. The warrant clearly indicates that the focus of the investigation was Defendant's alleged use of coercion to force D.G. to engage in prostitution. (Doc. No. 84-1 at 6) (concluding "[i]t is apparent that Shane was utilizing coercion, threats, and physical violence to force D_____ to perform prostitution"). Moreover, the warrant authorized the seizure of particularly described categories of evidence, such as firearms. Defendant does not attack the probable cause finding linking Defendant to the alleged sex trafficking of D.G. Nor does Defendant explain why he

believes the items to be seized (firearms, electronics, communication devices, and narcotics) are insufficiently tied to this crime.

This puts the Court in a difficult position. Defendant has challenged the particularity of the warrant, but Defendant's particularity arguments are so poorly framed and nebulous that they are nearly incapable of judicial review. Most of the time, Defendant's position appears to be that the June 29, 2015 warrant to search his home was invalid because the warrant – unlike the June 30, 2015 warrants – failed to identify the crimes under investigation by their legal names (i.e., human trafficking, kidnapping, and aggravated assault). *See* Motion at 5; Reply at 3. Defendant does not, however, identify any case law imposing such a requirement on a warrant affidavit. The Court can see no basis in precedent for doing so. The particularity requirement has never "been understood to demand of a warrant technical precision." *United States v. Christie*, 717 F.3d 1156, 1166 (10th Cir. 2013). While the June 29, 2015 warrant does not specify the sections of the criminal code Defendant allegedly violated, it adequately communicates the general nature of criminal activity under investigation: Defendant's use of force to coerce D.G. to engage in prostitution. This provides ample information for the Court to determine whether the evidence to be seized is related to the criminal activity alleged. To the extent Defendant claims otherwise, his arguments about the alleged lack of "particularity" are misplaced. The Court will, therefore, deny Defendant's request to invalidate the June 29, 2015 warrant and suppress all of the evidence seized from the home.

The Court acknowledges that it may have misconstrued Defendant's particularity argument. Perhaps Defendant's complaint about the warrant's failure to identify the "specific crime" under investigation is an infelicitous attempt to argue that some or all of the items to be seized are not related to the criminal activity under investigation. The problem is that Defendant

never develops this more reasonable position. Defendant repeatedly insists that the warrant fails to tie the items to be seized to a particular crime. But, Defendant does not identify these items or explain why the Court should find that each item (e.g. firearms) is not particularly described or is not related to a crime for which the warrant affidavit provides probable cause (e.g. Defendant's alleged use of a firearm to coerce D.G. to engage in prostitution). In the absence of this type of provision-by-provision showing of overbreadth, the Court is not in a position to invalidate the warrant as a whole. As Tenth Circuit precedent makes clear, the particularity of a warrant is not a uniform property. A warrant may contain both specific as well as unconstitutionally broad language. In such cases, in general, "the broad portion may be redacted and the balance of the warrant considered valid." *Brown*, 984 F.2d at 1077. Accordingly, to prevail on a motion to suppress for lack of particularity, a defendant must make a clause-by-clause showing that a warrant is overbroad and must either convince the court that the evidence he seeks to suppress was seized under an invalid clause or he must show that the invalid portions of the warrant predominate so that total suppression is required. *United States v. Sells*, 463 F.3d 1148, 1155, 1158 (10th Cir. 2006). Defendant comes nowhere close to making this showing; despite multiple opportunities to do so, he never explains why the various provisions of the warrant are overbroad.

For instance, at the June 20, 2016 motions hearing, the Court asked Defense Counsel to clarify which provisions of the warrant Defendant claimed were not particular. Rather than discuss the provisions of the warrant, Defense Counsel reverted to arguing that the entire search of the home was invalid because the "warrant itself fails to tie the items to a particular crime." For the reasons discussed above, this argument is unavailing.

To be clear, the Court is not saying that every provision of the June 29, 2015 warrant to search Defendant's home could withstand constitutional scrutiny. The Court is simply rejecting the generalized particularity argument Defendant has presented to the Court and is refusing to construct or address particularity arguments that Defendant did not raise. *See Drake v. City of Ft. Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (a court may not fashion arguments on a litigant's behalf when there is no discussion of these issues in the briefing). The Court notes that during the June 20, 2016 motions hearing Defense Counsel mentioned that Defendant would like the Court to suppress the heroin seized from his apartment. Defendant, however, did not flag this as an issue in the briefing. Moreover, at the hearing, Defense Counsel, neglected to present any argument as to why the Court should strike from the warrant the section allowing the seizure of narcotics. From context, the Court's best guess is that Defendant believes the Court should suppress the heroin because the warrant did not provide probable cause to search for narcotics or evidence of drug crimes. This argument has significant weight as the warrant does not contain any allegations tying Defendant to D.G.'s heroin use.[3] The Court, however, declines to issue an order suppressing the heroin on this ground. Because Defendant did not develop this argument either in the briefing or at the hearing, the United States has not had an opportunity to respond to it. Moreover, it is not even clear that the United States plans to introduce the heroin at trial.[4]

**II. Validity of the Cellphone Search**

Having concluded that Defendant's generalized particularity argument lacks merit, the Court now turns to Defendant's attack on the search of the cellphones. Defendant first asserts

---

[3] Detective Vollmer testified that D.G. told police Defendant was her supplier of heroin. However, this information is not in the warrant affidavit. All the affidavit reveals is that D.G. was a herion addict and had heroin in her possession on June 10, 2015.

[4] At the hearing, the Court asked the United States about the significance of the evidence Defendant was seeking to suppress. The United States did not list the drug evidence as evidence it planned to introduce at trial.

that that the language in the search warrants directing officers to hold the property seized for "safekeeping" nullifies the language in the incorporated affidavits permitting the search of the contents of Defendant's phones. The Court finds this stilted reading of the warrants unconvincing. Read in a common sense manner the warrants clearly direct officers that they may search the data stored within Defendant's phones. Defendant next maintains that the warrants impermissibly allowed police to conduct a generalized search of his cellphones. This is Defendant's strongest argument.

**a. Rules for Cellphone and Computer Searches**

As the Supreme Court has recognized, "[m]odern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life,'" such as diaries, calendars, photographs, correspondence, and other personal records. *Riley v. California*, 134 S. Ct. 2473, 2494-2495 (2014). For this reason, cellphones, like personal computers, are "especially vulnerable to a worrisome exploratory rummaging by the government." *See Christie*, 717 F.3d at 1164. To address this issue, the Tenth Circuit has prohibited the issuance of search warrants that empower law enforcement officials to conduct unlimited searches of cellphones, computers, and other electronic equipment. *United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2009) ( "a warrant authorizing a search of 'any and all information and/or data' stored on a computer would be . . . the sort of wide-ranging search that fails to satisfy the particularity requirement"); *United States v. Burgess*, 576 F.3d 1078, 1091 (10th Cir. 2009) (recognizing the rule against unbounded computer searches).

To be valid a computer search must "affirmatively limit the search to evidence of specific federal crimes or specific types of material." *Otero*, 563 F.3d at 1132. For example, the Tenth Circuit has upheld the validity of a search of a computer where the search warrant was "limited

to the kind of drug and drug trafficking information likely to be found on a computer." *Burgess*, 576 F.3d at 1091. On the other hand, if a warrant contains no discernible limitations on a computer search, e.g., if the warrant allows "a search of all computer records without description or limitation," the warrant does "not meet the Fourth Amendment's particularity requirement." *Burgess*, 576 F.3d at 1091. "[O]fficers conducting searches (and the magistrates issuing warrants for those searches) cannot simply conduct a sweeping, comprehensive search of a computer's hard drive . . . Officers must be clear as to what it is they are seeking on the computer and conduct the search in a way that avoids searching files of types not identified in the warrant." *United States v. Walser*, 275 F.3d 981, 986-987 (10th Cir. 2001).

Determining whether a warrant to search a computer satisfies these requirements depends on how the court interprets the scope of the warrant. As the Tenth Circuit has recognized, a "warrant need not necessarily survive a hyper-technical sentence diagraming and comply with the best practices of Strunk & White to satisfy the particularity requirement." *Otero*, 563 F.3d at 1132. Consequently, not every warrant is invalid that on first glance appears to authorize a wide-ranging and unbounded computer search. "[A] word is known by the company it keeps." *Burgess*, 576 F.3d at 1091. Under certain circumstances, it may be more natural to read limitations expressed elsewhere in a warrant as applying to an otherwise unrestricted provision allowing the search of computer records. *See, e.g.*, *id.* (warrant authorizing search of "computer records" was best read as permitting limited search of computer records for evidence of drug

crimes because search was otherwise clearly directed at evidence of drug crimes);[5] *United States v. Burke*, 633 F.3d 984, 993 (10th Cir. 2011) (warrant telling officers to seize computer and search "for evidence related to the crime listed, which was sexual exploitation of a child" was sufficiently particular); *United States v. Brooks*, 427 F.3d 1246, 1252 (10th Cir. 2005) (holding that warrant approving a search "'for evidence of child pornography,' including 'photographs, pictures, computer generated pictures or images, depicting partially nude or nude images of prepubescent males and or females engaged in sex acts,'. . . as well as 'correspondence, including printed or handwritten letters, electronic text files, emails and instant messages'" naturally instructed "officers to search [text] files only for evidence related to child pornography"). As these cases illustrate, when deciding whether a warrant adequately restrains a computer search, a reviewing court must "interpret search warrant affidavits in a common sense and realistic fashion." *Burgess*, 576 F.3d at 1091.

Here, as it must, the United States concedes that the warrants would not satisfy the particularity requirement if they are read to "allow a search of all [phone] records without description or limitation." *Burgess*, 576 F.3d at 1091. The determinative question is whether the warrants when read in common sense manner, somehow limited the officers' discretion to search the phones. The United States contends that that the warrants were sufficiently particular because the introductory paragraph limited the entire search, including the search of the phones, to

[5] In *Burgess*, the challenged warrant authorized the search of "[t]he property and premises of a white, 1999, Freightliner Motorhome . . . [for] certain property and evidence to show the transportation and delivery of controlled substances, which may include but not limit[ed] to, cash, or proceeds from the sale of controlled substances, Marijuana, Cocaine, Methamphetamine, or other illegal controlled substances, along with associated paraphernalia to include but not limited to pipes, bongs, syringes, packaging material, computer records, scales, laboratory dishes, flasks, beakers, tubes, pie tins, electrical timers, containers to be used for storing, manufacturing and selling, chemicals used in the creation of illegal narcotics as well as their diluting agents, items of personal property which would tend to show conspiracy to sell drugs, including pay-owe sheets, address books, rolodexes, pagers, firearms and monies." *Id.* at 1083.

evidence of Aggravated Assault, Kidnapping, Homicide, Suspicious Deaths, Domestic Violence, Burglary, Larceny, Narcotics and Prostitution. Response at 8. This argument does not hold water. The introductory paragraph of the warrant affidavits states:

> Affiant is a full-time, sworn Law Enforcement Officer with the Albuquerque Police Department. Affiant is currently assigned to Special Investigations Division, VICE Unit. Affiant has been with the Albuquerque Police Department since 2004. Affiants [sic] duties include follow-up investigations on all felony crimes to include but not limited to: Aggravated Battery, Aggravated Assault, Kidnapping, Homicide and Suspicious Deaths, Domestic Violence situations, Burglary and Larceny, Narcotics, and Prostitution. All felony and misdemeanor crimes.

The warrant affidavits go on to list the items Detective Vollmer would like to seize and the "facts tending to establish the foregoing grounds for issuance of a Search Warrant." (Doc. No. 84-1 at 3-4). It is quite apparent that the purpose of the introductory paragraph is to explain Detective Vollmer's background and that the list of crimes contained in this paragraph are examples of crimes he has responsibility to investigate. Notably, this list is not exhaustive. Detective Vollmer indicates that he is empowered to investigation "all felony crimes" including but not limited to the list provided. As Detective Vollmer clarified at the June 20, 2016 hearing, this list was not intended to identify the crimes for which the warrant provided probable cause or to otherwise place limitations on the search.

The United States does not identify any other constraints on the phone searches. Nor does the Court discern clear limitations on the phone searches when reading the warrant as a whole. Therefore, Defendant's concerns that the warrants allowed police to conduct an impermissible generalized search of his cellphones appear to be well founded. As Defendant emphasizes, the warrants empowered police to conduct a "complete" search of any phones found in Defendant's residence or vehicle. The warrants did not specify in writing what officers were permitted to look for during these searches. Nor did they articulate any explicit limitation on the officers' ability to

riffle through the phones. In this regard, the warrants look much more like the warrant that the Tenth Circuit found invalid in *United States v. Riccardi*, 405 F.3d 852 (10th Cir. 2005) than the warrants the Tenth Circuit upheld in *Burgess*, *Burke*, and *Brooks.*

In *Riccardi*, the challenged warrant permitted the seizure of the defendant's computer and:

> all electronic and magnetic media stored therein, together with all storage devises [sic], internal or external to the computer or computer system, including but not limited to floppy disks, diskettes, hard disks, magnetic tapes, removable media drives, optical media such as CD-ROM, printers, modems, and any other electronic or magnetic devises used as a peripheral to the computer or computer system, and all electronic media stored within such devises.

*Riccardi*, 405 F.3d at 862. Tenth Circuit concluded that this warrant violated the Fourth Amendment because it was "not limited to any particular files, or to any particular federal crime." *Id.* The warrants authorizing the search of Defendant's phones contain similarly broad language allowing officers to search for and seize "data stored on/within the internal and/or external memory" of Defendant's phones "including, but not limited to text message, voice messages, and/or any other data." (Doc. No. 84-1 at 4). Furthermore, the warrants emphasize that they permit "the complete search" of the phones. *Id.* These provisions strongly suggest that the search of phones is unlimited.

There is nothing in the remainder of the warrant to effectively counteract this suggestion. Unlike the warrants in *Burgess*, *Burke*, and *Brooks*, the warrants never state that officers must direct their search of the phones (or of any of the other enumerated items) to evidence of a specific crime or crimes. While the allegations in the warrant affidavits indicate that the focus of the investigation is Defendant's use of force and threats to make D.G. engage in prostitution, the warrants do not incorporate these allegations into the section authorizing police to search and seize all firearms, electronics, phones, and drugs. Nor is it practical to read the warrants as

containing an implied limitation directing officers to search only for evidence of sex trafficking as the warrants authorize officers to search for evidence, i.e. illegal narcotics, that is not clearly tied to the sex trafficking offense. Read as a whole, the warrants do not circumscribe, with either technical precision or practical accuracy, officers' ability to search the data on Defendant's phones. As a result, the portion of the warrants authorizing the complete search of all phones and electronics is overbroad and violates the particularity requirement.

The Court notes that the United States' misreading of the warrants bolsters this conclusion. In the briefing and at the June 20, 2016 hearing, the United States originally took the position that police were authorized to search Defendant's phones for evidence of crimes, such as burglary, larceny, and homicide, that are completely unrelated to the allegations in the warrant affidavit. If an experienced government attorney has difficulty identifying constitutional boundaries on the scope of an authorized computer search, the Court has serious concerns about whether the officers conducting the search knew what they were looking for and carefully tailored their search to finding these items. As the United States' reading of the warrants shows, the warrants simply do not communicate clear, case-specific limitations on the scope of the cellphone searches.

**b. Good Faith Exception**

The United States argues that, even if the Court finds defects in the warrants, the Court should deny Defendant's motion to suppress under the good faith exception to the exclusionary rule. The Supreme Court first announced what has become known as the "good-faith exception to the exclusionary rule" in *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the Supreme Court reasoned that evidence "obtained in objectively reasonable reliance on a subsequently invalidated search warrant" should not be suppressed under the Fourth Amendment's

exclusionary rule, because suppressing such evidence would not serve to deter illegal police conduct. *Id.* at 922. To determine whether an officer's reliance on a warrant is objectively reasonable, a court must consider all of the circumstances, including the text of the warrant and the circumstances of the search. *Otero*, 563 F.3d at 1134. "The test is an objective one that asks whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* Significantly, the United States, not Defendant, carries the burden of proof of showing that the good-faith exception applies. *Leary*, 846 F.2d at 607 ("the government, not the defendant, bears the burden of proving that its agents' reliance upon the warrant was objectively reasonable")*; United States v. Roach*, 582 F.3d 1192, 1204 (10th Cir. 2009) (same).

The United States, however, has not presented sufficient evidence or argument to support a finding that officers reasonably believed the search of Defendant's phones was legal despite the deficiencies in the warrants. In the briefing, the United States asserts that officers reasonably relied on the warrants because they were signed by neutral state court judges. But the Supreme Court has repeatedly warned that officers cannot delegate complete responsibility for assessing the constitutionality of a warrant to the magistrate judge. "[A] warrant may be so facially deficient--i.e., in failing to particularize the place to be searched or the things to be seized--that the executing officers cannot reasonably presume it to be valid." *Otero*, 563 F.3d at 1134 (quoting *Leon*, 468 U.S. at 923). Here, the warrants authorize a "complete" and unbounded search of Defendant's phones in contravention of numerous Tenth Circuit cases. The Court agrees with Defendant that this provision of the warrants is so overbroad that no reasonable officer could, in good faith, rely on it to authorize the search of all data on Defendant's phones.

This does not end the Court's inquiry. In the context of an overbroad computer search, the Tenth Circuit has held that even if the warrant is facially deficient, the court must evaluate "the circumstances of the search to ascertain whether the agents [nevertheless] might have reasonably presumed [the search] to be valid." *Riccardi*, 405 F.3d at 863. In general, even if a warrant does not affirmatively limit a computer search, as long as officers considered "themselves authorized to search only for evidence of crimes for which they had probable cause" and limited their search in accordance with this understanding, the Tenth Circuit Court of Appeals has found that the good faith exception permits the introduction at trial of the evidence seized from the computer. *See Otero*, 563 F.3d at 1135-1136 (good faith existed where officers read the warrant as limited and the computer search "was reasonably constructed to limit the amount of irrelevant data while still effectively uncovering relevant evidence."); *Riccardi*, 405 F.3d at 864 (officers acted in good faith in searching computer for child pornography because "the investigating officers carefully limited their search to files relevant to the investigation;" plus officers executing warrant were involved in investigation).

Unfortunately, the evidence in the record does not support a finding that the officers involved in the search of Defendant's phones understood the warrants to be limited and tailored their search of the phones to look for evidence of Defendant's alleged prostitution business. At the June 20, 2016 motions hearing, Detective Vollmer testified that he separated the phones into two batches and gave some phones to Homeland Security Investigations ("HSI") and other phones to the Regional Computer Forensic Laboratory ("RCFL"). Computer specialists at HSI and RCFL then searched Defendant's phones and provided Detective Vollmer with data from the phones. Detective Vollmer reviewed this data, including images and text messages, for information relevant to the case. Detective Vollmer was not present when HSI agents processed

and searched Defendant's phones. Moreover, although he was present at the RCFL while the phones were processed, Detective Vollmer is not a computer specialist and he could not to describe the search methodology. As a result, Detective Vollmer does not know if the methods of the searches or the extent of the searches differed between the facilities and he was not able to provide the Court with clear assurances about the scope of these searches.

The testimony Detective Vollmer did provide about the phone searches suggests that he did not necessarily understand the search of Defendant's phones to be limited to evidence of Defendant's alleged sex trafficking of D.G. When the Court asked Detective Vollmer what limitations he believed the warrants imposed on his search of the cellphone data, Detective Vollmer responded "None, your Honor. That's why I put in the items, I put telephones, pagers and any data, text messages, photos, that are included on that actual phone." Consistent with this representation, Detective Vollmer indicated that he went through Defendant's text messages. Although Detective Vollmer later agreed with Counsel for the United States that the warrants did not authorize him to search for crimes unrelated to the crimes described in the affidavit, he never provided the Court with an exhaustive list of these crimes. Moreover, on cross examination, he again confirmed that the warrants authorized a "complete" search of the phones. In light of this confusion and lack of detail, the Court is not in a position to make a finding that Detective Vollmer believed the warrants limited his authorization to search Defendant's phones to evidence sex trafficking. Similarly, the United States did not present sufficient evidence for the Court to conclude that Detective Vollmer tailored his searches to avoid viewing data unrelated to the underlying investigation.

Furthermore, even if Detective Vollmer personally believed the warrant constrained his ability to search Defendant's phones (something that is far from clear) and curbed his search of

the data in accordance with this belief, Detective Vollmer does not appear to have communicated any limitations on the phone searches to the other officers who processed and searched Defendant's data. Detective Vollmer explained that he gave the phones to the RCFL employees along with a copy of the warrant, described the case, told them he was interested in information about backpage.com, and told them to have the phones "dumped." Similarly, Detective Vollmer explained that he also provided HSI with a copy of the warrant and assumed they were authorized to search the phones to the extent the warrant allowed. Detective Vollmer was not otherwise able to provide clear information about the search methodology or the limits of the phone searches. Consequently, the exact nature of the phone searches remains opaque. The Court does not know what types of searches were conducted, how these searches were limited (if at all), and what sorts of information was marked as potential evidence and saved for use against Defendant. Given all of these unknowns, the Court cannot make a finding that officers reasonably believed the search of Defendant's phones to be lawful. *See Burgess*, 576 F.3d at 1094 (respect for privacy interest usually requires an officer executing a computer search warrant "to first look in the most obvious places and as it becomes necessary to progressively move from the obvious to the obscure"); *Christie*, 717 F.3d at 1167 ("To undertake any meaningful assessment of [constitutionality of] the government's search techniques in this case (the how), we would need to understand what protocols the government used, what alternatives might have reasonably existed, and why the latter rather than the former might have been more appropriate."). Because the United States has not carried its burden of proof, the Court will not exempt the illegally seized evidence from the exclusion requirement.

IT IS THEREFORE ORDERED THAT:

1. Defendant's MOTION TO SUPPRESS EVIDENCE (Doc. No. 84) is granted in part and denied in part.
2. All evidence obtained from the search of Defendant's cellphones is suppressed.

SENIOR UNITED STATES DISTRICT JUDGE